United States District Court
District of Maine

MARGARET KATHLEEN NICKERSON-  )
MALPHER                                          )
                                                        )
                        Plaintiff,                  )
                                                        )
            v.                                         )        Civ. No. 07-136-B-W
                                                        )
JOHN BALDACCI, et al.,                    )
                                                        )
                        Defendants              )

### *RECOMMENDED DECISION ON MOTIONS TO DISMISS*

Margaret Kathleen Nickerson-Malpher has filed a 42 U.S.C. § 1983 action claiming that

ten named defendants and "John and Jane Does" violated her Fourth Amendment rights under

the United States Constitution.  The conduct of which Nickerson-Malpher complains surrounds

the September 2006 seizure of twenty dogs and one cat from her Topsfield, Maine property.  A

sub-set of defendants – Maine Governor John Baldacci, Attorney General Steven Rowe, District

Court Judge John Romei, Assistant District Attorney Paul Cavanaugh, District Attorney Michael

Povich, Justice of the Peace Daniel Lacasse, and Maine Superintendent of Agriculture Seth

Bradstreet--  has filed a motion to dismiss (Docket No. 4). Nickerson-Malpher has filed a

response. I recommend that the Court grant the defendants' first motion to dismiss.  I further

recommend that the Court partially grant the defendants' second "cross-motion" to dismiss

(Docket No.29) and dismiss the claims asserted by Nickerson-Malpher against all the defendants

in their official capacity because the are clearly barred by the doctrine of sovereign immunity.

*Discussion*

***Defendants District Court Judge John Romei and Justice of the Peace Daniel Lacasse***

With respect to District Court Judge John Romei, Nickerson-Malpher's complaint alleges:

John V. Romei, Judge of the 4th District Court, Calais. Maine has overstepped his authority by forfeiting my animals over to the state's Animal Welfare Program. At the hearing serious questioning of the state's statute and the way to proceed was brought up by my attorney.  Judge Romei ordered the proceeding to go forth under the Criminal statute not under the civil.  We have brought up the questionable statute as there are serious due process violations here.  Judge Romei spent some time trying to decide how to proceed.  He had to send the clerk for his law book.  It seems the judge was not very well prepared.  He should know the law.

At the end of the Hearing, Judge Romei made a comment about me that was printed in the newspaper and was uncalled for.  The media had a field day with it and this was carried onto the internet, TV, and even one website printed a map to my home which has put me in danger of my life as well as to the possibility of vandalism of my property.  Judge Romei is responsible for the defamation he has caused me.

(Compl. ¶¶ 13, 14.)[1]

With regards to Justice of the Peace Daniel Lacasse, Nickerson-Malpher alleges:

Daniel L Lacasse, Justice of the Peace, signed the Search Warrant which never should have been issued after an illegal prior search was done.  He should have known there was strong possibility of an illegal search as C. Perry said in her Complaint that she had been on my property on the 19th and had seen my dog in the resident/kennel.  That's a search.

(Compl. ¶ 21.)

It is clear that the allegations against these two defendants pertain to their judicial acts.

As the defendants argue, under the doctrine of judicial immunity, judges performing judicial acts within their jurisdiction are entitled to absolute immunity from civil liability. See Stump v. Sparkman, 435 U.S. 349, 356 (1978); Pierson v. Ray, 386 U.S. 547, 553-54 (1967); Decker v.

---

[1]    I have also considered the allegation in Paragraphs 11, 12, and 15 that touch on Judge Romei's conduct.

Hillsborough County Attorney's Office  845 F.2d 17, 21 (1st Cir. 1988) (return of property proceedings); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (disposition of marital assets).[2] The entitlement to absolute judicial immunity applies with equal force to claims against Justice of the Peace Lacasse in performing the judicial function of signing the warrant.  See Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980); see also Smith v. Shook, 237 F.3d 1322, 1325 (11th Cir. 2001).  Judicial immunity also shields Judge Romei from defamation liability for statements made in the court proceedings: "[I]he well-entrenched doctrine of absolute judicial immunity from liability for defamation is rooted in concerns about preserving judicial independence, effectiveness, and frankness."  In re Williams,156 F.3d 86, 92 (1st Cir. 1998); see also Burns v. Reed, 500 U.S. 478, 489-90 (1991).

### Defendants Paul Cavanaugh and Michael Povich

Apropos Assistant District Attorney Paul Cavanaugh, Nickerson-Malpher's complaint alleges:

> Paul Cavanaugh, the Ass't District Attorney and Prosecutor at the Possession Hearing held on October 20, 2006 and continued on November 7, 2006, presented evidence which was objected to by my attorney, Ronald Bourget and such objections were overruled by presiding Judge John V. Romei at the District Court in Calais. This Hearing was a sham.  My evidence was denied by Judge Romei. The judge only considered evidence brought by the Prosecutor and which the transcripts clearly show as inconsistent and untruthful.  Photographs presented of dogs were not positively identified by me.  Some of these photographs appeared "doctored up" and were not taken at my kennel but taken later at the shelter.  It became clear to me after this hearing that an illegal operation involving many persons was involved.
>
> Paul Cavanaugh made a surety demand of the incredible amount of over $96,000 to be paid by me for the care of only 20 dogs and 1 cat.  My attorney objected to the court in a motion.  Judge Romei ordered the amount su[a] sponte decreased to

---

[2]   Absolute judicial immunity "applies even when the judge is accused of acting maliciously and corruptly." Pierson, 386 U.S. at 554; see also Cok, 876 F.2d at 2, although Nickerson-Malpher's allegations against these two defendants do not support such a characterization.  Her allegations are that these two judicial officers did not have a sufficient grasp on the law and, thus, they acted in error.  See Stump, 435 U.S. at  356.

$10,000 which was also objected to.  Also sua sponte Judge Romei decreased the amount to the maximum allowed under Amendment 8 of $2500.00 and this was paid in order for me to be able to Appeal.  Under the Maine Constitution there should be no bond.  This is a "red flag" that certain persons have conspired to make money off of animal seizure in the State.

Due to the serious nature of this case, the monstrous amount of money Paul Cavanaugh asked for using a highly questionable statute to procure it, and a judge who was willing to go along with it had my attorney not read him the law and according to Maine law no amount should be paid to allow me to redress to the court in Portland (the highest court in Maine) and my first amendment constitutional rights. Judge Romei and Paul Cavanaugh certainly gave no thought to this.

(Compl. ¶¶ 11, 12, 15.)

Vis-à-vis District Attorney Michael Povich, Nickerson-Malpher complains:

Michael Povich, District Attorney, has allowed his Assistant D.A. to present a case which he knew was flawed and he knew as did the Ass't D.A. and Prosecutor Paul Cavanaugh that the Cruelty to Animal Statute was unconstitutional.

(Compl. ¶ 24.)

The allegations in Nickerson-Malpher's complaint against Cavanaugh concern his prosecutorial conduct during the animal possession hearing.  There can be no question that Cavanaugh is absolutely immune from civil liability for any part he had in initiating the prosecution of this action against Nickerson-Malpher and for activities "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). Absolute prosecutorial immunity shields Cavanaugh even if he acted wrongfully or maliciously. Id. at 427 & n. 27.  See also, e.g., Reid v. New Hampshire, 56 F.3d 332, 336 - 38 (1st Cir. 1995).

With respect to District Attorney Povich, there is no support for Nickerson-Maplphers's assertion that the Maine statute under which the proceedings occurred is unconstitutional, so it follows that there can be no claim that Povich "knew" that it was so.  In terms of any

4

participation he may have had in Nickerson-Malpher's proceeding, either directly or as a supervisor, he enjoys the same absolute immunity as Cavanaugh.

### Defendants Governor Baldacci, Attorney General Rowe, and Superintendent Bradstreet

As to Governor Baldacci, Attorney General Rowe, and Superintendent Bradstreet Nickerson-Malpher's theory of recovery against them seems to be that they failed to respond when she contacted them about her concerns.  As to all three she maintains that "they are officials whose responsibility it is to see that those under them obey the Law of the land" and she opines that it "appears that they are not doing so."  (Compl. ¶ 20.) These defendants can be held liable as supervisors "for the constitutional misconduct of [their subordinates] only on the basis of an 'affirmative link' between [their] acts and those of the offending employee."  Gaudreault v. Municipality of Salem, 923 F.2d 203, 209 (1st Cir. 1990) (quoting Voutour v. Vitale, 761 F.2d 812, 820 (1st Cir. 1985)).   That is the three "can be held liable only on the basis of [their] own acts or omissions, amounting at the least to 'reckless' or 'callous' indifference to the constitutional rights of others."  Id. (quoting Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir.1989)).

Nickerson-Malpher complaint charges Governor Baldacci as follows: "I called Governor Baldacci's offi[ce] when in 2004 my neighbors doges were taken by Animal Welfare, unjustly.  I know them and they are not dog abusers.  I never heard from the Governor."  (Compl. ¶ 19.)  (I note that this allegation does not seem to have any legal bearing on the claims that Nickerson-Malpher forwards in this action concerning the 2006 process against her.)

Regarding Attorney General Rowe, Nickerson-Malpher alleges:

Steven Rowe, Attorney General, via his assistant, wrote me saying he had no role to play.  I disagree.  This is a very serious situation which should be looking into right away.   Hundreds of innocent people and their animals are in danger.  I

believe Mr. Rowe should act in the best interests of the people of Maine, all the
people, not just those who are biased in any way.  Deceivment [sic] by state
authorities has been going on and through it people are being deprived of their
legally owned property under Color of Law.  This is dangerous and needs to be
stopped.  Norma Worley is not running an animal welfare program but rather a
program to steal under Color of Law.  She may be operating under orders.

(Compl. ¶ 17.)  Worley, also a defendants, is the Director the State's Animal Welfare Program.

And finally, with respect to Superintendant Bradstreet, Nickerson-Malpher asserts:

Seth Bradstreet III is Superintendant of Maine's Dept. of Agriculture.  It is
doubtful that he does not know of Norma Worley and her staff's activities.  There
has been a lot of publicity regarding dog seizures and horses, too, in the state of
Maine.  People are beginning to question what is going on.  I, too, wonder!  I sent
a copy to Mr. Bradstreet of my letter to Mr. Rowe.  I have not heard from him.

(Compl. ¶ 18.)

In my opinion these paragraphs do not contain facts sufficient to "state a claim to relief

that is <u>plausible</u> on its face" <u>Bell Atlantic Corp. v. Twombly</u>, __ U.S. __, __, 127 S. Ct. 1955,

1974 (2007),  in terms of holding these three defendants liable under the <u>Gaudreault</u> standard for

the <u>alleged</u> constitutional wrong worked by Norma Worley.  <u>Compare</u> <u>Iqbal v. Hasty</u>, 490 F.3d

143, 169 (2d Cir. 2007).  The deferential standard for ruling on Federal Rule of Civil Procedure

12(b)(6) motions "does not force [this] court to swallow the plaintiff's invective hook, line, and

sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like

need not be credited." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996).

### *Nickerson-Malpher's Response to this Motion to Dismiss*

Nickerson-Malpher did respond to the motion to dismiss.  She opines:

1. Officials have no immunity when they violate a Citizen's U.S.
   Constitutional rights.
2. All officials are presumed to know the Law.
3. Serious Due Process violations have occurred in Plaintiff's case.
4. Plaintiff's right to a Trial by Jury was denied her.
5. There were exigent circumstances in this case,

6

6. The Search Warrant was faulty.
7. The State of Maine's Animal Cruelty Statute is unconstitutional.  It is void for vagueness.
8. A reasonable and honorable judge would have seen immediately what was wrong with a highly questionabl[e] search warrant.  Search warrants must be with particularity (and not general descriptions, to allow for exploratory search.)
9. Judge Romei did not say that Plaintiff had a right of Appeal.
10. See Attached Laws.  See attached Legal Briefs and state Statute.

(Pl.'s Resp. Mot. Dismiss at 1.)[3]

Points one through nine and the attached briefs and statutes do nothing to defeat the defendants' arguments apropos the doctrine of judicial immunity and prosecutorial immunity, nor do they further <u>at all</u> a plausible claim for supervisory liability against Governor Baldacci, Attorney General Rowe, and Superintendant Bradstreet.

### *The Cross-motion to Dismiss and Nickerson-Malpher's Claims against All Defendants in their Official Capacity*

I previously granted a motion by Nickerson-Malpher to amend her complaint to specify that her claims are brought against all her defendants in their individual and official capacities. (<u>See</u> Docket Nos. 27 & 30.)   These official capacities claims against all the defendants – all of who are employees of the State of Maine --must be dismissed because they are barred by the doctrine of sovereign immunity.  See <u>Wisconsin Dept. of Corr. v. Schacht</u>, 524 U.S. 381, 384 (1998); <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989); <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-167 & n.14 (1985);  <u>Ford Motor Co. v. Dep't of Treasury</u>, 323 U.S. 459, 462–64 (1945); <u>In re State of New York</u>, 256 U.S. 490, 500–01 (1921).

In her response to this motion, as applicable to this issue, Nickerson- Malpher opines:

---

[3]    In her response to the defendants second, "cross-motion" to dismiss Nickerson-Malpher argues that immunities under Maine Tort Laws do not apply to her 42 U.S.C. § 1983 federal claims.  (Resp. Cross-Mot. Dismiss at 2 (¶ 8).)  The doctrines applied here are not Maine Tort Law immunities.

> Plaintiff's Law Suit addresses the violations of her secured Constitutional Rights. Top officials cannot hide behind 11th Amendment immunities when they violate these rights. State of Maine and its officials have a custom over many years of violating the Constitutional Rights under Color of Law. Such custom is unlawful.

(See Resp. Cross-Mot. Dismiss at 2 (¶ 6).) What Nickerson-Malpher fails to understand is that the application of the doctrine of sovereign immunity by this court is not optional. Given the contours of this case there is no question that the defendants have a right to have the doctrine applied to Nickerson-Malpher's claims against them in their official capacity.

I do not recommend, however, granting this "cross-motion" to the extent that it seeks dismissal of the entire action on jurisdictional grounds. The Maine Law Court has now ruled in the State of Maine's favor on Nickerson-Malpher's direct appeal of the district court order regarding the seizure of her animals. (See Docket No. 31.) Nickerson-Malpher represents that she is going to appeal that decision to the United States Supreme Court. (See Resp. Cross-Mot. Dismiss at 2 (¶ 5).) In their brevis memorandum the defendants have not convinced me that Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005) counsels dismissal of this 42 U.S.C. § 1983 civil action (which seeks damages in addition to the return of her animals) under Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). See Exxon Mobile Corp., 544 U.S. at 284 ("The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."); see also id. ("Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions."). This

civil rights action as now constituted, in the event the Court adopts this recommended decision, is an action for damages brought against three state animal welfare workers in their individual capacities, alleging a violation of the plaintiff's Fourth Amendment rights.  If the current complaint is winnowed as I have recommended in this decison, I am not convinced the Rooker-Feldman doctrine would totally preclude this suit.[4]

### *Conclusion*

For the reasons above, I recommend that the Court grant the defendants' first motion to dismiss brought by Maine Governor John Baldacci, Attorney General Steven Rowe, District Court Judge John Romei, Assistant District Attorney Paul Cavanaugh, District Attorney Michael Povich, Justice of the Peace Daniel Lacasse, and Maine Superintendent of Agriculture Seth Bradstreet. (Docket No. 4).  I further recommend that the Court partially grant the "cross-motion" to dismiss brought on behalf of all defendants and dismiss the claims asserted in Nickerson-Malpher's action against all the defendants in their official capacity because these official capacity claims are clearly barred by the doctrine of sovereign immunity (Docket No. 29).  This disposition leaves alive Nickerson-Malpher's claims against Norma Worley, Christine Fraser, and Chistina Perry in their individual capacities.

### *NOTICE*

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to

---

[4]     I recognize that the defendants have until March 17, 2008, to reply to Nickerson-Malpher's response to their cross-motion to dismiss.  However, Nickerson-Malpher's twenty-one page combined reply to the objection to the motion to amend and response to the cross-motion to dismiss paid scant heed  to the Rooker-Feldman doctrine. In fact, the sum total of her argument was "Therefore, the Rooker-Feldman doctrine of which Plaintiff is unfamiliar does not apply."  (Doc. No. 32 at 2).  I conclude that anything defendants would file on the issue would not be in reply to her response but merely a restatement of their prior argument.  If they choose to do so, they can make those points in an objection to this recommended decision.  I have recommended granting them the relief they sought in the remainder of the cross-motion to dismiss.

28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive NOTICE memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 7, 2008.                                  /s/Margaret J. Kravchuk
                                               U.S. Magistrate Judge